contained eight letters of support for Podrazo from family and friends.

More important in this case, of the factors for consideration, are the nature of the offense and the amount of violence involved in the crime. The injuries Podrazo inflicted on A.T., who was only 19 years old at the time of the assault, are described above and were characterized by medical personnel as "[s]evere." A.T. testified that when she woke up in the hospital, she had pain everywhere, including in her vagina and anus. When she was released from the hospital on Christmas Day, she was still experiencing pain and had to use her hands to move her legs to get out of bed. She was sent home from the hospital with icepacks, wipes for her vaginal area to help with the pain, and pain medication. A letter written by A.T. and included in the presentence report describes the significant emotional, mental, and physical impact Podrazo's actions had on her life. Because the sentences are supported by competent evidence and within the statutory guidelines, we conclude the district court did not abuse its discretion in the sentences imposed.

## V. CONCLUSION

For the foregoing reasons, we find no merit to Podrazo's assigned errors. We therefore affirm his convictions and sentences.

AFFIRMED.

---

STATE OF NEBRASKA, APPELLEE, V.
MATHEW W. WORKMAN, APPELLANT.
___ N.W.2d ___

Filed December 10, 2013.    No. A-12-888.

1. **Due Process.** The determination of whether the procedures afforded an individual comport with the constitutional requirements for procedural due process presents a question of law.
2. **Probation and Parole: Due Process.** The minimal due process to which a parolee or probationer is entitled also applies to participants in the drug court program. This minimal due process includes (1) written notice of the time and place of the hearing; (2) disclosure of evidence; (3) a neutral factfinding body

or person, who should not be the officer directly involved in making recommendations; (4) opportunity to be heard in person and to present witnesses and documentary evidence; (5) the right to cross-examine adverse witnesses, unless the hearing officer determines that an informant would be subjected to risk of harm if his or her identity were disclosed or unless the officer otherwise specifically finds good cause for not allowing confrontation; and (6) a written statement by the fact finder as to the evidence relied on and the reasons for revoking the conditional liberty.

3. **Probation and Parole.** A probation revocation hearing is not part of a criminal prosecution or adjudication and therefore does not give rise to the full panoply of rights that are due a defendant at a trial or a juvenile in an adjudication proceeding. The same proposition should apply in a drug court termination hearing.

4. **Appeal and Error.** An alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error to be considered by an appellate court.

5. **Proof.** The standard of proof for termination from drug court participation is preponderance of the evidence.

6. **Appeal and Error.** An appellate court is not obligated to engage in an analysis that is not needed to adjudicate the controversy before it.

7. ____. An appellate court may, at its discretion, discuss issues unnecessary to the disposition of an appeal where those issues are likely to recur during further proceedings.

8. **Convictions: Sentences.** If a drug court participant is terminated from the program or withdraws before successful completion, then the conviction stands and the case is transferred back to the original court for sentencing.

Appeal from the District Court for Sarpy County: WILLIAM B. ZASTERA, Judge. Judgment reversed, sentence vacated, and cause remanded for further proceedings.

Patrick J. Boylan, Chief Deputy Sarpy County Public Defender, for appellant.

Jon Bruning, Attorney General, and Kimberly A. Klein for appellee.

INBODY, Chief Judge, and IRWIN and MOORE, Judges.

MOORE, Judge.

## I. INTRODUCTION

Mathew W. Workman appeals from the orders of the district court for Sarpy County that terminated his participation in a drug court program as a result of several violations of the conditions of his drug court contract and sentenced him to

concurrent terms of 20 months' to 5 years' imprisonment on his original drug charges. On appeal, Workman asserts that the district court did not comply with procedural and substantive due process safeguards in the termination proceeding and that imposition of a sentence for violation of his drug court contract was not authorized. Because we find that the district court failed to provide a written statement as to the evidence relied on and the reasons for terminating Workman's participation in the drug court program, we reverse, vacate, and remand for further proceedings.

## II. BACKGROUND

On November 16, 2009, Workman pled guilty to three amended charges of possession of a controlled substance, all Class IV felonies. At the plea hearing, Workman was asked if he understood that if he cannot complete drug court, he could be found guilty of three Class IV felonies, each punishable by a fine of up to $10,000 or confinement for a period of up to 5 years, along with other consequences, to which he responded in the affirmative. Workman's pleas were accepted, and he was referred to Sarpy County's adult drug court.

On February 21, 2012, the State filed a motion to terminate Workman's participation in the drug court program for violations of his drug court contract—specifically, conditions 4, 5, 7, 11, and 15. The motion contained specific allegations of actions or inactions on the part of Workman to support termination. A hearing on the motion was held on March 6, at which Workman was present and represented by counsel.

The first phase of the hearing was to determine whether violations of Workman's drug court contract had occurred. Testimony was adduced by Workman's drug court supervision officer, Lisa Vetter. Vetter testified that she reviewed the drug court contract with Workman on November 17, 2009, in her office, at which time they went over each condition verbally and she explained how he could fulfill those conditions. The drug court contract, which was signed by Workman, Vetter, and the "Drug Court Judge" on November 16, along with an addendum signed on September 20, 2010, was received in evidence as an exhibit without objection. Vetter also gave

Workman Sarpy County's adult drug court policy and procedure manual, a copy of which was also received in evidence without objection.

Vetter testified to the conditions of the drug court contract that she believed Workman had violated. Condition 4 required Workman to timely pay the drug court fees. Vetter indicated that condition 4 was violated because Workman had not been keeping up on making payments toward his drug court fees, and as of February 22, 2012, he owed $580 in fees. An exhibit was offered by Workman's attorney and received in evidence showing fees of $585 owed by Workman as of February 27. Next, Vetter testified that condition 5 was violated when Workman failed to appear for an office appointment with her on September 14, 2011. Condition 5 requires participants to appear for scheduled appointments. Vetter learned on January 17, 2012, that Workman had been fired from his job approximately 1 week before. Workman failed to notify Vetter that he had been terminated from his employment until their next meeting on February 8. Condition 15 of the drug court contract required Workman to notify Vetter within 72 hours of losing his job, which Workman did not do. Finally, on February 4, Workman was discharged from the three-quarter-way house that he was required to reside at as a part of his treatment program and did not immediately notify Vetter. Vetter testified that this was a violation of both conditions 7 and 11 of the drug court contract. Condition 7 required Workman to be open and honest with the drug court team regarding his drug use and lifestyle, along with any changes in his lifestyle. Condition 11 required Workman to keep Vetter informed of his current address and telephone numbers and to report any changes within 2 calendar days. Workman declined to offer evidence at this phase of the proceeding. At the conclusion of this portion of the hearing, the district court made oral findings that Workman was in violation of conditions 4, 5, 11, and 15.

The court then proceeded to the termination phase of the hearing to determine whether Workman should be terminated from the drug court program. Vetter again testified about her supervision of Workman and to the various levels of treatment that he participated in. While Workman successfully

completed his initial pretreatment program and intensive out-patient treatment program, he did not graduate successfully from the continuing care or aftercare treatment program. Workman was "kicked out" of the three-quarter-way house where he was living while he was doing continuing care, because he was behind on rent. He was then told to move to a particular shelter, but instead, he was staying at his mother's house contrary to instructions. Because Workman had received the maximum benefit available through the continuing care program, he was discharged from that program and subsequently referred to a treatment house. Workman was eventually discharged from this treatment house, having reached maximum benefit but not having successfully completed all of the requirements. He was again sent to a three-quarter-way house from which he was asked to leave due to noncompliance with the rules and his dishonest behaviors. Vetter testified to Workman's continued dishonesty during his treatment programs. Finally, Vetter testified to three missed drug testing appointments by Workman.

Additional exhibits were received in evidence detailing sanctions received by Workman throughout his drug court program for his missing an office appointment, missing drug testing, continued dishonesty, and being late for an office appointment. The exhibits show various periods of unemployment and being fired from jobs. The exhibits also show inconsistent progress in the various treatment programs. After the State presented its evidence at the termination phase of the hearing, Workman was again given the opportunity to present evidence, which he declined. The district court verbally reviewed the evidence, noted the particular concern about Workman's dishonest behavior, and concluded that termination from the drug court program was appropriate.

A docket entry was made March 6, 2012, by the district court, finding that Workman was in violation of conditions 4, 5, 11, and 15 and that his participation in the drug court program should be terminated. The entry then set the matter for a later sentencing hearing. In case No. A-12-214, Workman filed an appeal from the March 6 docket entry, which appeal we dismissed on April 13 for lack of jurisdiction. After entry of

our mandate, Workman was sentenced on August 27, as recited above. Workman again appealed.

## III. ASSIGNMENTS OF ERROR

On appeal, Workman assigns as error that (1) the district court did not comply with the procedural and substantive due process safeguards required by *State v. Shambley*, 281 Neb. 317, 795 N.W.2d 884 (2011), thereby rendering erroneous the termination of Workman's participation in the drug court program, and (2) even if the *Shambley* due process protections were honored, any violations by Workman of his drug court contract did not authorize imposition of a sentence, because he had agreed to the terms of a quasi-contract and not a sentence of probation.

## IV. STANDARD OF REVIEW

[1] The determination of whether the procedures afforded an individual comport with the constitutional requirements for procedural due process presents a question of law. *State v. Shambley, supra*.

## V. ANALYSIS

### 1. WAS WORKMAN AFFORDED ADEQUATE DUE PROCESS IN DRUG COURT TERMINATION PROCEEDING?

In *State v. Shambley, supra*, the Nebraska Supreme Court considered for the first time what process is due in drug court termination proceedings. In that case, following several proceedings involving alleged violations of the defendant's drug court contract, the drug court team recommended that she be terminated from the program. A hearing on termination was held, and the court advised the defendant that it was her burden to go forward with showing why she should not be terminated from the program. The court received in evidence a letter, with attachments, from the drug court coordinator recommending the defendant's termination from the drug court program. No other evidence or testimony was presented by the State. Defense counsel objected to the court's consideration of the letter and attachments on the grounds of hearsay and lack of

foundation, and also argued that the manner in which the proceedings were conducted violated the defendant's rights to due process and confrontation. These objections were overruled. After the defendant offered testimony, the district court agreed with the recommendation to discharge her from the program, and thereafter sentenced her.

[2] On appeal, the Supreme Court in *State v. Shambley, supra*, concluded that the termination hearing did not comport with the minimal due process to which a drug court participant is entitled. In reaching this conclusion, the court reasoned that the minimal due process to which a parolee or probationer is entitled also applies to participants in the drug court program. This minimal due process includes (1) written notice of the time and place of the hearing; (2) disclosure of evidence; (3) a neutral factfinding body or person, who should not be the officer directly involved in making recommendations; (4) opportunity to be heard in person and to present witnesses and documentary evidence; (5) the right to cross-examine adverse witnesses, unless the hearing officer determines that an informant would be subjected to risk of harm if his or her identity were disclosed or unless the officer otherwise specifically finds good cause for not allowing confrontation; and (6) a written statement by the fact finder as to the evidence relied on and the reasons for revoking the conditional liberty. See *id*.

[3] We are also mindful that a probation revocation hearing is not part of a criminal prosecution or adjudication and therefore does not give rise to the full panoply of rights that are due a defendant at a trial or a juvenile in an adjudication proceeding. *In re Interest of Rebecca B*., 280 Neb. 137, 783 N.W.2d 783 (2010); *State v. Schreiner*, 276 Neb. 393, 754 N.W.2d 742 (2008); *State v. Schuetz*, 18 Neb. App. 658, 790 N.W.2d 726 (2010). We find the same proposition should apply in a drug court termination hearing.

In the present case, Workman claims in his first assignment of error that he was not afforded adequate due process in two ways, corresponding to requirements (1) and (6) above. Workman concedes that minimum due process was complied with by the State with regard to disclosure of the evidence,

a neutral factfinding body, an opportunity to be heard and to present witnesses and documentary evidence, and the right to cross-examine adverse witnesses.

### (a) Written Notice of Time and Place of Hearing

Workman first argues that there was no indication that he was served with the motion to terminate his participation in the drug court program or that he was arraigned on the motion. The transcript before us does not contain a certificate of service of the motion or an indication that Workman was served with the motion. However, Workman appeared at the hearing on the motion to terminate and was represented by counsel who participated in the hearing.

The State argues that Workman did not object at the hearing that he was not being provided adequate due process and that as such, he has waived the right to assert prejudicial error on appeal. Our careful review of the record confirms that at no point did Workman raise any issue with regard to the adequacy of the notice of the hearing. The Nebraska Supreme Court has noted numerous circumstances in which a defendant has been found to have waived both statutory and constitutional rights by failing to make a timely objection. See, *State v. Nadeem*, 284 Neb. 513, 822 N.W.2d 372 (2012); *State v. Collins*, 281 Neb. 927, 799 N.W.2d 693 (2011) (noting waiver in failure to raise unconstitutionality of statute, failure to object to confrontation issue, right of defendant to be present at trial, consideration of lesser-included offenses, voir dire procedure, jury selection, procedure for handling jury questions, and trial management).

We agree with the State that Workman has waived his right to assert a lack of written notice of the hearing on the motion to terminate his participation in the drug court program. At no time did Workman assert that he did not have written notice of the hearing. Clearly, Workman and his attorney had notice of the hearing as they appeared for the hearing, and it is clear from the record that Workman's attorney participated in the hearing through cross-examination of the State's witness and argument to the court.

As a part of his argument on lack of notice, Workman asserts that he was not aware of the termination policy or procedure. The minimum due process requirement of written notice of the time and place of hearing does not encompass such an explanation. We note that in *State v. Shambley*, 281 Neb. 317, 795 N.W.2d 884 (2011), the Supreme Court did not adopt the procedural requirements contained in Neb. Rev. Stat. § 29-2267 (Reissue 2008) for probation revocation cases, which includes the right of the probationer to receive, prior to the hearing, a copy of the information or written notice of the grounds on which the information is based. Rather, the court in *Shambley* adopted the minimal due process requirements noted above. We also note that the due process rights contained in *Shambley* do not require an arraignment prior to the hearing on the motion to terminate from drug court.

Finally, to the extent that Workman's argument is that he was not aware that termination from the drug court program was a possibility, the record refutes this assertion, and the argument is without merit. Workman was previously given a copy of Sarpy County's adult drug court policy and procedure manual, which contains a provision for termination. Workman was also provided a copy of his drug court contract, and the terms and conditions were previously reviewed with him by Vetter, his drug court supervision officer. The contract, immediately above Workman's signature, states that the participant's violation of any of the conditions contained in the contract may subject him to sanctions or to terminate his participation in the drug court program.

We conclude that Workman's argument that he was not provided with written notice of the hearing on the State's motion to terminate his participation in the drug court program is without merit.

### (b) Written Statement
### by Fact Finder

Workman next argues that the district court failed to provide him with a written statement as to the evidence relied on and reasons for revoking the conditional liberty of participation in the drug court program and, as such, violated his right to

due process. The written journal entry from the district court merely sets forth the conditions of the drug court contract that it found were violated by Workman and the finding that his participation in the drug court program should be terminated. The journal entry did not contain a statement of the evidence relied on by the court or the reasons for revoking the conditional liberty of drug court participation. Although the bill of exceptions contains the oral findings by the trial court as to which provisions of the contract were violated by Workman and the reasons that the court found his termination from the drug court program to be appropriate, such does not satisfy the minimal due process requirement of a written statement by the fact finder. Further, Workman could not have waived this requirement by failure to object as the written journal entry was made after the hearing. Accordingly, we reverse the court's order of termination and remand the cause with instructions to the district court to enter an order which contains a written statement as to the evidence relied on and the reasons for revoking the conditional liberty of Workman's participation in the drug court program, based upon the record made at the previous hearing.

[4,5] Although Workman also included an argument that the State did not prove by clear and convincing evidence that his participation in the drug court program should be terminated for violations of his contract, the State correctly points out that Workman did not assign this as an error in his brief. An alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error to be considered by an appellate court. *State v. Eagle Bull*, 285 Neb. 369, 827 N.W.2d 466 (2013). We further note that the standard of proof for termination from drug court participation is preponderance of the evidence. See *State v. Shambley*, 281 Neb. 317, 795 N.W.2d 884 (2011).

## 2. Did Court Err in Imposing Criminal Sentence?

[6-8] Workman's second assignment of error, although difficult to understand, seems to be that it was error to impose a criminal sentence as it was not authorized by the drug

court contract. Because we are reversing the order terminating Workman's participation in the drug court program and remanding the cause for entry of a new order which comports with due process, we also vacate the sentence imposed by the district court. An appellate court is not obligated to engage in an analysis that is not needed to adjudicate the controversy before it. *State v. Merchant*, 285 Neb. 456, 827 N.W.2d 473 (2013). However, an appellate court may, at its discretion, discuss issues unnecessary to the disposition of an appeal where those issues are likely to recur during further proceedings. *State v. Floyd*, 272 Neb. 898, 725 N.W.2d 817 (2007), *disapproved on other grounds, State v. McCulloch*, 274 Neb. 636, 742 N.W.2d 727 (2007). We find it prudent to discuss this argument to the extent that it suggests the district court is without authority to impose a criminal sentence, because that issue is likely to resurface on remand. As noted in *State v. Shambley, supra*, if a drug court participant is terminated from the program or withdraws before successful completion, then the conviction stands and the case is transferred back to the original court for sentencing. That is what occurred in this case, and the district court clearly had authority to do so. This assigned error is without merit.

## VI. CONCLUSION

Workman's claim that he was not afforded adequate due process in the termination of his participation in the drug court program due to lack of written notice of the hearing is without merit. However, the failure of the district court to provide a written statement as to the evidence relied on and reasons for revoking the conditional liberty of participation in the drug court program violated the minimum requirements of due process. Workman's argument that the district court did not have authority to impose sentence after termination of Workman's participation in the drug court program is without merit. We reverse the order of the district court which terminated Workman's participation in the drug court program, and we remand the cause with instructions to the district court to enter an order which contains a written statement as to the evidence relied on and the reasons for revoking

the conditional liberty of Workman's participation in the drug court program, based upon the record made at the previous hearing. The sentence imposed is vacated, and the cause is remanded to the district court for resentencing following the entry of the new order.

Judgment reversed, sentence vacated, and cause remanded for further proceedings.

---

Coleen McDonald, appellee, and State of Nebraska, intervenor-appellee, v. Del McDonald, appellant.

___ N.W.2d ___

Filed December 10, 2013.    No. A-12-1058.

1. **Modification of Decree: Visitation: Child Support: Appeal and Error.** Issues involving the modification of a divorce decree, parenting time, and the amount of child support are initially entrusted to the discretion of the district court, whose determinations in these matters are reviewed de novo on the record for an abuse of discretion.

2. **Child Support.** The trial court's discretion to award child support extends to its determination that the child support award should be retroactive.

3. **Attorney Fees: Appeal and Error.** An appellate court reviews a trial court's award of attorney fees for an abuse of discretion.

4. **Courts: Words and Phrases.** An abuse of discretion occurs when a trial court acts or refrains from acting, and the selected option results in a decision which is untenable and unfairly deprives the litigant of a substantial right or just result.

5. **Modification of Decree: Child Custody.** Ordinarily, custody of a minor child will not be modified unless there has been a material change in circumstances showing that the custodial parent is unfit or that the best interests of the child require such action.

6. **Modification of Decree: Words and Phrases.** A material change in circumstances means the occurrence of something which, had it been known to the dissolution court at the time of the initial decree, would have persuaded the court to decree differently.

7. **Modification of Decree.** Changes in circumstances which were within the contemplation of the parties at the time of the decree are not material changes in circumstances for purposes of modifying a divorce decree.

8. **Modification of Decree: Child Custody: Proof.** Prior to the modification of a child custody order, two steps of proof must be taken by the moving party. First, the moving party must show a material change in circumstances that affects the best interests of the child. Second, the moving party must prove that changing the child's custody is in the child's best interests.